The argument is not to exceed 20 minutes per side. Mr. Sandberg for the appellate. May it please the court, counsel, judges. We go from the very cool admission of the young attorneys here to having the privilege of appearing before you, and I appreciate that. Mr. Burris challenges his conviction of Let me just ask you first, are you reserving time for review? Oh, I'm sorry, yes, Judge. I appreciate that. Five minutes. Okay, that's fine. Thanks. I appreciate that correction. Mr. Burris challenges his crime of violence enhancement on the grounds that the Ohio felonious assault conviction does not count. In this particular case, although Mr. Burris had been sentenced to 90 months, which was a below guidelines sentence, the offense level based on his career offender status gave him an offense level of 32, and the guideline range was 210 to 262, and it's our position that heading up and found a career offender's proper offense level would have been 18, and that guideline range is 51 to 63. Admittedly, because it wasn't raised, the challenge at sentencing, plain air review applies to this case. As this court has recently addressed in the Williams case, as well as in the direct appeal here, it's the position that in light of both Mathis as well as Discamps, that this court's decision in Anderson needs to be revisited. In Anderson, this court did not hold or specifically find whether or not the felonious assault statute under Ohio law is either divisible or indivisible, and certainly because it's a matter of federal law, there isn't any issue or any case law specifically stating whether it is divisible or indivisible under Ohio law. So that's for this court to decide specifically. It's the position here before the Sundbank panel that it is an indivisible statute, and it is overly broad, and thus it cuts too big, overly broad a swath based on the way the statute reads as compared to the model penal law. Let me ask just a foundational question. If we were to find that the statute is divisible, does that end our inquiry with respect to Anderson? If you find that it's divisible, I don't believe that it does end the inquiry. Certainly it changes the complexion of the way that Anderson is interpreted in this circuit, but I don't think it ends that inquiry. The most important aspect is with regard to when federal courts look at career offender status, they need to look to the law that's governing that, and here that's Ohio. The Ohio felonious assault statute, I would contend, has two different means for accomplishing that same felonious assault conviction. There isn't anything in Ohio law that specifically states that it is one crime under A1, one crime under A2, although because there's some suggestion in Ohio law that they're allied, although one sentence would apply, it's still only one conviction that would be applicable, and so I think that this court can find that it needs to read in its entirety that felonious assault statute. The way that the effect on the career offender position in the guidelines is the same as it's affected in the ACCA, unlike the ACCA, which would then make it have a mandatory minimum of 15 years based on the calculation of the guidelines here, going from 18 to 32, it's such consequential effect on a criminal defendant that then is before this court, or is before a district court. Sam Berg, you may need to adjust the microphone just a bit. How do I do that? Is that easily adjustable? Or just use your trial voice. Thanks. Has everybody heard me so far? Yes, we have. Okay. And because this is an issue, when courts rely on Anderson, and they look to Ohio state law, we know from Ohio state law, for instance, with the Hodges case, although the government contends that it is essentially an outlier, it's not an outlier. It's Ohio law. Ohio law says that a mental injury can result in a felonious assault conviction, and that's a problem, because finding that makes it overly broad as it relates to the way the model penal code reads. In Hodges, there was no force that was used, and that's important because under the federal law, force is required in order to hold that conviction as a crime of violence. Federal law also refers to threatened use. Right. So Hodges is a perfect case, then, to look at, because there was no threatened use of force as it relates to... Let's not talk about these intermediate court of appeals decisions. What's wrong with the statutes? If all we had were the statutes, would there be a problem here? Does your argument turn entirely on these intermediate court of appeals decisions? It doesn't turn entirely on that. What would be the problem with this, if we just compare the elements clause, including the threatened use of force, with the Ohio statute, and we can use A1 or A2, what's the defect in the language of the Ohio law? Right. So the defect in the language of the Ohio law that I believe makes it so that it's not a crime of violence is, for instance, in A1, where the mental harm is specifically set forth there. Threatened use as a physical force can lead to mental harm that leads to hospitalization quite easily and quite understandably, and it wouldn't make it any less a crime of violence. It seems really quite natural. Well, I don't agree with that. I think that, for instance, in the HIV case, there were... If someone comes up from behind with a gun and threatens to shoot you if you don't give them everything, and you have a nervous breakdown afterwards, that seems like a natural causation from that particular incident. Right, but when... No touching, there's nothing physical, it's a threat, and it leads to hospitalization. Right. But when we... And I don't mean to... You're about to go to the state Intermediate Court of Appeals decisions. I'm trying to keep you focused on the language, and the language, it seems to me, works pretty well, and the rule is the Intermediate Court of Appeals decisions are something we look at, but it doesn't tell us what to do, and we have plenty of cases that talk about outlier decisions, and we don't let outlier decisions negate the language of the statute. Right. Well, in this particular case, there hasn't been any request made, for instance, under the Ohio Procedural Law 9.01 that would have requested a certification of a question to the Ohio Supreme Court, asking them to answer, and so when we look to the statute, we need to look to the Ohio courts that are interpreting that statute, it's their law, it's their interpretation, and although there isn't specifically an on-point Ohio Supreme Court case that is discussing, we have to then go to the intermediate courts. Or the language of the statute. That's true as well, but because this court routinely relies upon not only the language of the specific statute, but also relies upon how the Ohio courts are interpreting their own law, it's important to not ignore the interpretations by the Ohio intermediate courts. Even if we would prefer to have Ohio Supreme Court stating and speaking specifically on that issue, I think when we look to the language, getting back to your question, Judge Sutton, under the serious physical, under A-1, and we look to the definition of that, that includes mental harm, and I don't think that when we look specifically and only to the language of both the statute of felonious assault as well as the definitions that are relied upon, that we can exclude from that the fact that a non-force related injury can occur and yet an individual be found guilty of felonious assault. And if we go to the second part, the physiological injury, I think similarly, if the court were to look at it as a divisible statute, they could look at and see that physiological may be anxiousness that may be accompanied, and that's not the type of thing that requires force. And so under A-2, that would permit an attempt, right, and then it would permit a non-physical force related injury. And I don't think that that's what the guidelines intended, I don't think that that's what the Supreme Court of this court intends to allow to constitute a crime of violence, and that's why I believe that that's why we're here in panel as an en banc hearing to reconsider this very important issue. I want to go back to Hodges very briefly. Again, maybe it's considered an outlier decision generally, however, what we don't know is how many people have pled guilty because that's what the law in the state of Ohio is. And the only way we would know whether or not that that's the case is to ask every county clerk, every circuit court clerk to provide from a subpoena records of everybody that has pled guilty to that charge, and then look to the facts underlying that. And that's just, that's not feasible, it's not, it doesn't make any sense, and that's why we have to look to how has Ohio interpreted its own statutes. Mr. Sandberg, I don't mean to take you out of the flow of your argument, but you conceded that our review is for plain error, and I'm just a bit puzzled as to how a district court can commit plain error when the court is following an on-point published decision of our court. Well, when it gets to Sixth Amendment rights, I think that that's the type of thing that plain error is specifically related to, and why we're able to revisit that issue. And I don't disagree with you that had it been raised in the district court, what the court would have been confronted with. However, had it been addressed in the district court at the time of sentencing, these types of arguments could have been raised, could have been fleshed out into the same effect. You want relief for your client, not just a change in the law. What would be the path that you would advocate for finding or holding that there was plain  error? Well, I think because this court has not interpreted Anderson in light of Discamps and Mathis as it relates specifically to the felonious assault statute, that's why it's properly before this court, and that's why the district court at the time was relying upon only those things that it had before it. And so when it's raised on direct appeal, which is what we have here. If plain error requires clear or obvious error, how can it ever be clear or obvious for a district court to do what it took an oath to do and follow the published precedent of this court, including the issue you just highlighted, which we ourselves are struggling with? So to call it clear or obvious... I think it's clear or obvious given, had it been raised in light of Discamps and Mathis, I think that that's the exact type of issue that the district court would have been able to contemplate and consider. A quantum of our judges in Williams, I guess, and Burris have now reaffirmed Anderson post Mathis, correct? And to Camps. Correct. So they too made clear or obvious error under this analysis. Well, I'm not sure I agree with that. I would say that in the Williams case, the panel that was considering said that we are bound by Anderson, and so we can't reverse the circuit's own precedent. So I would disagree with you to the extent that it's saying that the issue... Wait, you're saying that a district court should have done it sua sponte without it being raised, but that the court of appeals should not? No. For Burris, which is what we most specifically have to talk about, the issue was never raised. Although I believe that it's the type of thing that is clear and should have been raised and constitutes a violation of the Sixth Amendment rights. Now when we get to this court and its consideration of Williams first before Burris, this court said we're bound by Anderson. We understand that there are questions related to Anderson, but this... You understand the logic of that is the district... The circuit doesn't have to buck its own precedent, but you're asking us to create anarchy within our circuit where a district court can revisit our precedent on its own sua sponte. No. I'm asking this court to clarify what this circuit's position is on the issue of Anderson in light of Matheson discamps. I'm not saying that there's lack of clarity. I'm saying that there isn't any binding precedent coming out of this circuit for district courts to rely upon. I'm just struggling to see how it helps your client, though. We could agree with you that Anderson should be overruled, and let's say we do that. I mean, just hypothetically. How then do we go further and say, moreover, the error was plain, and your client's entitled to relief? It's pretty tough on the district court to say the court's error was plain if it's following our precedent as it's bound to do. Well, it certainly is on that issue. However, there are other issues that were raised by the government, for instance, the residual clause that I haven't had a chance to talk about, but that's been done in the briefs. And so to the extent that the residual clause has any role in this, it would be our askance of this court to remand it for resentencing so the court could then consider whether or not it would have, in redoing the sentence, have relied upon the residual clause or not. Suppose that a majority of this court were to say that Anderson was clearly wrong. Could that offer a vehicle then for you to overcome plain error review limits? I certainly think if this court found that, given more recent Supreme Court precedent, that Anderson is overturned. Even given the precedent that was then, we had Judge White's concurring opinion in Anderson. But hypothetically, suppose that that was the scenario. I'm not sure that what this court would be doing is overturning Anderson as much as clarifying for the purposes of the circuit what this court's position is so that it informs the district courts. But the issue of whether or not it's... She's trying to help you, first of all. Yeah, no, I understand. Number one. And number two... I appreciate that, Judge Sutton. Number two, I think that's what Johnson says. I think Johnson says the appellate court can say something was clearly wrong and that just fixes the whole problem. That's what happened in the U.S. Supreme Court. So they said something was clearly wrong. That allowed plain error, even though the courts up to then had been following precedent and that got around the problem. I suppose my difficulty in answering the question is it depends on the way that the court frames its decision in this case. It just has to say it's clearly wrong. Right. And so long as it speaks to that, then it would go back to the district court for resentencing. I agree. Mr. Sandberg, I see that your red light is on. Sure. Assume that we disagree with you and find this statute to be divisible. Do you have an argument or is that the end of your... Is your question... Relating to Part 2, if the government says that under Part 2 of the statute, there are Shepard documents which show that Part 2 of the statute is there and Part 2 doesn't suffer from this mental problem that you're talking about, is that correct or what's the answer to that briefly? Because your time is up. I appreciate that, Judge. I disagree that the inquiry is over at that point in time because as I indicated before, I think... But in a sentence, why not? Because Part 2 deals with physiological that would encompass mental harms and the associated... At least it's much less clear that it encompasses mental harm. Maybe. Right. Thank you. You'll have your rebubble time. Thank you. Thank you, judges. May it please the court, Becky Lutzko on behalf of the United States. Your honors, Ohio Section A1, felonious assault, which requires a defendant to knowingly cause serious physical harm, categorically qualifies as a crime of violence under the guidelines as well as a violent felony under the Armed Career Criminal Act. Specifically, there are two different crimes that Ohio criminalizes as felonious assault. One is the A1 serious physical harm variant and the other is the A2 physical harm plus a deadly weapon variant. To answer Judge Rogers' question that was last posed to my colleague, the physical harm variant clearly qualifies under this court's precedent in graffiti among other reasons because it's not only physical harm, but it's physical harm plus a deadly weapon. When you have those two things in combination, that satisfies the Johnson 2010 force as I said. In particular, with respect to counsel's point about whether that involves anxiety or not, the legislature in the 1974 notes when they first enacted or I believe they first enacted the serious physical harm and physical harm definitions clearly said that mental harms are not part of physical harm. They are only part of serious physical harm as defined and only serious severe mental harms qualify under that latter definition. The government in this case briefs us for multiple different reasons why the government would prevail in this case and for why Mr. Burris' convictions count as crimes of violence. Those included, your honors, have identified already the fact that we're on plain error review as well as... If we just say that it's clear error, does that allow us to grant relief? Your honor, I would say no because I don't think given the way the statute is written that you can say that it's clearly erroneous. Let's say we did say that. Can we grant relief? If you did say that, then yes, you could consider it on the merits. However, I would note specifically in the Turner... And it would be plain error? I mean, if we said it's just clearly a blown call, we overrule it, sorry. I believe Johnson does allow for that, but I would note, your honor, that in the Turner case this court specifically pointed out that while the question about whether Anderson was rightly decided could be a debatable question, it is certainly not plainly erroneous. And I would submit that given the language of the statute as well as the precedent upon which it is or that's construed it, that you can't find it to be clearly blown essentially in this case. I appreciate the straightforward answer. Thank you. Thank you, counsel. So isn't it possible that Mr. Burris waived his argument here? Because in his sentencing memorandum, he conceded that these guidelines applied to him. And we have this case called United States versus Ruiz from 2015 in which we seem to say that conceding in your sentencing memorandum amounts to waiver, and if it's waiver rather than forfeiture, then there's just no error. It's not plain error, but it's not error. You are correct, your honor, and below the... In fact, Mr. Burris conceded at the district court level that this crime counted. He argued that it overstated the extent of his criminal history, but he conceded that it did count. So then we wouldn't be talking about plain error, although both of you seem to think it's plain error. It's not error. Your honor, as you point that out, I agree. You're correct. The government did proceed on the idea that this was plain error, but when I think about the distinction between forfeiture and waiver, I do believe you're correct. But then you forfeited the waiver. Yes. Your honor, yes. You're correct. Back to where we started, I think. Well, exactly. But I think back to where we started is that Anderson was correctly decided, and certainly that it is not clearly... It was not decided clearly, erroneously, given the statute. I would... How do we get to that? Because that really is the bottom line question. Was Anderson correctly decided, and why is it not true that the Ohio statute is overbroad because it includes any mental illness as an example of serious physical harm? Yes, your honor. And so, I would focus here clearly, as requested, on the force clause. Although I do believe the other two clauses in this case, the residual clause of the guidelines, which wasn't in place at the time, as well as the enumerated clause, also would... Mr. Burris' conviction also would counter to those. But focusing on the force clause, it categorically qualifies because it necessarily requires proof that the defendant used force capable of causing physical pain or injury. Mr. Burris' argument focuses on the ultimate result that happens to the defendant, and he... Where's the force, if I could ask? I'm sorry. Where's the force in the Ohio statute, A-1? So, as this court has pointed out in numerous different cases, to include Collins, Patterson, Anderson itself, that you don't need a stand-alone element of the statute, as long as that force is essentially baked into the requirements for the defendant to commit the crime. Considering this en banc, and so all of our prior precedent are put to the side, and the Supreme Court cases, and interpreting the sentencing guideline, and interpreting A-1, you're saying that with those as our only sources, the Supreme Court cases, sentencing guideline, and A-1 of the felonious assault statute, that there is a force... Required, yes. Required. Where do you get that? Because, Your Honor, the type of force that that serious physical harm definition requires is... I'm sorry, the type of harm that that serious physical harm definition requires cannot be committed. It cannot be... I'm sorry, it necessarily requires the defendant to engage in Johnson 2010 type force. And so, because the defendant must do that in order to cause the kind of severe mental trauma we're talking about. We're talking about things like PTSD. And you can't cause PTSD simply by looking at someone crosswise, or doing something that's a minor, and doesn't satisfy Johnson 2010 force. Well, suppose, I know there's an Ohio case, and I'm now going to sort of change the facts a little bit, but suppose that someone knows that the child's dead mother is lying on the bed, and the person leaves that body on the floor. That could cause a mental illness, or condition of great gravity, and could be a basis for felonious assault under Ohio law. Is that true or not? I would say no, and for a couple of reasons. So first of all, I would back up just a couple of steps to say that if you search Westlaw, and you put in the Ohio felonious assault statute, you come up with roughly 4,000 cases. Just shy of 4,000 cases where felonious assault is at issue. And a little bit more than half of those, I believe, are A2 cases, and roughly 2,000 of those are A1 cases. And I bring that up because, while I haven't read 4,000 cases, in all of the various ways that I've researched this, I've come up with three possible cases, which I would define as outliers, that possibly might not meet the Johnson 2010 force definition. In particular, one is the Elliott case that I believe your Honor is referring to. But I would note in there a couple of things. So first of all, Elliott did physically kill the mother. Right, and I said that I was changing it. Correct, and as your Honor is of course well aware, the court has been counseled by the Supreme Court not to engage, I think the term is in flights of fancy, but certainly to look at what the law actually is. But nonetheless, respecting your hypothetical, I would note that in that case, there's a heavy emphasis on the parental duty, and the court repeatedly in that case acknowledged how unique of a situation it was. And I believe it's undisputedly, the facts of this case are unique. Research reveals no other instance of prosecution for a mental injury caused by the defendant's failure to act. And so really, that case is unique. But nonetheless, I think if you have... So I... Can I interrupt you? I'm just... Yes, absolutely. Pardon me, I'm just not following. So I think of Johnson as a physical force case, and the question there is, what kind of battery, what nature of physical force is needed? I don't think of it as a threat case. So that's what's puzzling me a little bit. I think we're so focused on Johnson, but the statute does talk about threat, and of course it's quite natural that it would be threats that would be much more likely to lead to serious mental injuries, or at least, that's not an improbable thing at all, and I'm just not sure what Johnson has to say about that. You're correct, your Honor, and you... So why... Okay, but why didn't you respond to Judge Moore by talking about threat? I feel like I must be missing something. So I guess I maybe didn't get there, and I apologize for going in a roundabout way. No, I... You're not wrong. No, I absolutely apologize for going about in a roundabout way, because as Judge Sutton is keying into, the point is that the definition under the force clause is use of force, attempted use of force, or threatened use of force. And Johnson does focus primarily on that use, or exclusively on that use of force, and that is nonetheless the force capable of causing severe pain or physical injury, and therefore, nonetheless, to leave... So let's say that's a better way to think about it, not Johnson, then what do we do about, you call them outlier cases, they call them heartland cases, where it's hard to look at those fact patterns and say they were threat prosecutions. Well, I would say that there are a combination... In the minister and the woman, what's the threat? So one thing I would point out in that particular case is that the top line holding in that case that court says is about physical actions by the defendant, that the jury could have reasonably concluded that the victim's priest and therapist, the defendant, was aware that his conduct probably would result in certain physical harm to the victim, and then they go on to talk about the severe mental harm. So I think if you look at the actual cases that involve this type of thing, almost all of them, with the potential exception of Hodges and or Elliott, they still involve physical violence, but with those potential exceptions, the crime that is caused that's resulting in the mental harm is a combination of physical force, and it's a combination of physical I'm sorry, it involves physical force, and it's a combination of physical harm and mental harm. And I would point that the Eighth Circuit, in looking at an Iowa statute that involved a very similar definition, found that that combination was sufficient. How then is the dead mother case physical force? I'm sorry? The dead mother case? Yes. How is that physical force against the son? So I would note in there that the defendant in that case, obviously he used, there's no question that he used physical force against the mother, and I think he was found innocent of that. He was, Your Honor. So then that's why it's the son victim that we have to talk about. You're correct, Your Honor. And again, I think that is a very unique result in this situation, and Under the Kessler-Hurdle approach, if there is I apologize, I didn't hear the beginning Under the categorical approach, if there is an interpretation of the Ohio statute that applies over broadly, then we have to say that this is more than what's covered under the sentencing guideline. And that is true if the state Ohio Supreme Court had spoken on this, but these are intermediate appellate courts, and while they certainly provide guidance to this court, they are not going to admit that if this issue were presented to the Ohio Supreme Court, that the result might ultimately not be the same. But if the statute is divisible, this is an A2 case. Correct. And so we're not talking about mental harm at all. Correct. At that point. So if it's an A2 case and it's divisible, do we need to talk about Anderson at all? Well, Anderson does find, it treated the statute indivisibly because it found that both components the A1 and A2 qualified. And so I certainly think you would reference Anderson, but it's not the same, it's certainly not the same discussion. The A2, to Judge Sutton's earlier question, I mean, is there any way to use a deadly weapon without it being a threat of force? I cannot think of one, and I want to say that the Ohio Supreme Court has spoken on that particular issue. I apologize, I'm not going to be able to pull a case up in my mind. But I think in the Patterson case that this court decided, they referenced Ohio Supreme Court case law where they were talking about the brandishing use display of a weapon and how that, by its very nature, is a use of force because it's a deadly weapon. And so if you get though to the A2 prong of that, I think under the Rafiti decision and certainly the reasoning that was written there and adopted by other panels of this court, you've got a physical result plus a deadly weapon and that's sufficient to be force-capable of causing pain or physical pain or injury and clearly satisfies Johnson 2010. You didn't argue that to the panel? I believe we did argue that to the panel. The panel, in this particular case, this issue came up sort of backwards. Initially it wasn't argued by... You were sort of arguing from opposite ends on whether it was divisible. That is correct, Your Honor. It's hard to make this... Well, Your Honor... You can't argue divisibility in order to make this... Your argument, Your Honor... It's not that it matters because that's all they... But, Your Honor, at the time that the government was looking initially at this case, Anderson was binding precedent and it was before a panel which couldn't overturn it. And then the government then looked at some of the concepts relating to divisibility and particularly looked at the Ohio idea of allied offenses of similar import. Upon this court granting en bas review, the government did a much more thorough analysis and looked at the various guideposts that Mathis asked, directs this court to look at. We really couldn't have argued it to the panel. The panel thought it was... And because Anderson treated it that way. That answers my question. Okay. Thank you, Your Honor. I would... As set forth in my brief, I certainly would say that the focus that Mr. Burris is asking this court to take is looking only at that resulting harm and not looking at that baked in requirement of violent force, Johnson 2010 level force, in order to commit this felonious assault in Ohio. And therefore, when this court looks at that, then the statute categorically qualifies. But if we talk about the term you used, baked in force, the Supreme Court has said that not all force is violent force, you know, categorically. And I think that's... You would concede that. So looking at the, you know, the elemental clauses and acknowledging that there are different levels, shouldn't the statute say what it means, rather than people having to rely on, you know, baked in elements that are not specified in the statute or that the court has not set out in that statute? Your Honor, I think if you look at what the legislature is getting at here, you know, this statute is felonious assault. And it's not felonious assault by accident, right? That's what the Ohio legislature called this thing. And when you look at, and while I know that a title of a statute doesn't govern the Supreme Court in the Yates opinion, that's that fish case with Section 1519, but in that case in particular, they look at the title as giving some clues to what the legislature intended here. And assault has always, it's understood as involving a battery or an attempted battery or a battery putting someone in apprehension or fear. And so when you look at that and look at how Ohio has limited this to situations that are involving, that result in either a severe physiological harm or also a severe mental trauma. Just by its very nature, it requires a forceful action. I would note that in these cases, virtually all of them that I've at least looked at involve a victim who has PTSD. And PTSD, if you look at the generally medical accepted definition of that under the Diagnostic and Statistical Manual, the DSM-5, it requires exposure to actual or threatened death, actual or threatened serious bodily harm, or actual or threatened sexual violence. And so those are all... Do you have PTSD if you came upon a terrible scene and became extremely upset about that? Well, the defendant... There are some other components of the statute that would, I think, prevent that random bystander potentially from qualifying. In particular, the defendant has to knowingly cause the serious physical harm. So in that Elliot case, the defendant knew that his 6-year-old son was upstairs and was the only other person at that house. That defendant knew that he left his wife in a pool of blood, a horror scene downstairs, and knew that that son was the person who was going to find his mother and is a small child. And that, combined with that parental duty, is what allowed that to qualify in that case. But that is a very unique situation. But that suggests there is one case where felonious assault was found, in fact, by an Ohio court of appeals where it was because the father left the mother's body for the son to find. And so under the categorical approach, it would be an example of the statute in Ohio being broader than what is required under the sentencing. And I would submit that it's not because it is an intermediate appellate court and not the Supreme Court of the state. I would note that in the Brown case... So there are diversity cases, then, that we don't have to follow the state courts and appeals in Ohio, and if the Supreme Court of Ohio has been silent, we can do whatever we want? I'd have to think that one through, Your Honor. But I would further note that the Ohio Supreme Court, the closest that I've found that it's gotten to talking about this, is the Brown case. And in Brown, they talk about serious physical harm and the purpose of that statutory definition. And they define it as to prevent physical harm to persons. So when you look at that through the lens of using force or attempting to use force or threatening to use force that is capable of causing serious physical harm, I think you get to the point where this statute qualifies. Thank you, Ms. Lupton. Is there another question? Well, apparently no further questions. Your time has expired. Thank you, Your Honor. Thank you. And I would just ask that the court sitting on Bonk confirm the Anderson decision and find that Ohio felonious assault, Section A1, in fact qualifies categorically as a crime of violence and a violent felony. Thank you. Amber? Very briefly. I think we got a lot of questions out the first time, and then I heard what you were asking of counsel for the government. Unfortunately, I disagree with the government when they talk about that felonious assault may not be felonious assault by accident. That's exactly what happened in the Elliott case. He was charged with felonious assault because he failed to prevent his child from coming downstairs. A similar circumstance could come around where, let's say, someone murders somebody and prevents a bystander, let's say the murder takes place in a public way or something like that, and fails to prevent a bystander from coming to see this body. Similarly... Why might not someone think it's a threat of physical force to see a dead family member's body down on the kitchen floor? The obvious person is the husband who did it. Why wouldn't that be a threat? That would be inferring facts that don't exist. I mean, the fact that someone came up on the pot... I've only mentioned facts that exist. What's that? I've only mentioned facts that exist. I'm not sure that the child coming down would have necessarily drawn that correlation between who was the perpetrator, he just saw the body. And so, for all intents and purposes, using the terminology that the government said, it was a charge of felonious assault by accident. And my hypothetical that I was attempting to draw upon was that under Ohio law as it exists right now, certainly by the intermediate courts, a felonious assault charge could similarly be brought against someone who caused the death of somebody but then prevented a bystander from coming by and seeing that same body. That's just not... That's not what the model penal code permits as far as a crime of violence. And so, unless there's any other questions, I hope this court reconsiders Anderson and finds favor of Mr. Burris. Thank you very much. Thank you, Mr. Sandberg. Thank you, Ms. Lutzko, as well. Mr. Sandberg, I note that you have taken on this case under the Criminal Justice Act. For that, we thank you. Mr. Burris should be thankful and certainly is a service to our system at large. We appreciate it. Thank you very much. Appreciate it. Thank you. The case will be submitted.